## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| _____ | ) | |
| UNITED STATES OF AMERICA | ) | Criminal No. 1:18-cr-10436-PBS |
| | ) | |
| v. | ) | |
| | ) | |
| AHMEDELHADI YASSIN | ) | |
| SERAGELDIN, | ) | |
| a/k/a AHMED SERAGELDIN, | ) | |
|     Defendant. | ) | |
| | ) | |
| _____ | ) | |

### DEFENDANT AHMED SERAGELDIN'S SENTENCING MEMORANDUM

The Defendant, Ahmed Serageldin, submits this Memorandum with respect to the application of 18 U.S.C. § 3553(a) to the facts and circumstances of the offense of which he has been convicted.  For the reasons reflected in the Memorandum and to be discussed at the sentencing hearing, Mr. Serageldin respectfully submits that a sentence of three years' probation, satisfied by his appearance at sentencing, a $7,500 fine, and a $100 special assessment for each count is sufficient but not greater than necessary to achieve the purposes of sentencing.

## I.     Introduction

Ahmed Serageldin is highly skilled engineer and a loyal American who, simply put, made a series of terrible mistakes.  Having come to the United States to receive a first-class graduate education in physics, Mr. Serageldin stayed to build his life, family, and career here. He joined Raytheon Company and earned a secret-level security clearance, which enabled him to apply his advanced scientific education to many sophisticated, classified projects.  He loved his work and spent almost 20 years happily solving some of Raytheon's most difficult problems in developing cutting-edge aerospace technology.

But, as Mr. Serageldin will forever regret, he acted carelessly with the classified material with which Raytheon, the government, and his fellow citizens had entrusted him.  He took electronic and hard copy documents home with him to use and refer to for work purposes. Among the documents he took home were the five documents classified at the secret level listed in the Superseding Information.  *See* ECF No. 60.

While Mr. Serageldin's actions were wrong and foolish, he did not betray his country or sabotage his important work for Raytheon.  Instead, Mr. Serageldin remains loyal to both.  But those facts do not excuse what he did, and he fully recognizes and appreciates the seriousness and the wrongfulness of this conduct.  He accepts full responsibility not only for the conduct described in the Superseding Information, but also for the severe consequences that his actions have had on his family, his career, himself, and the security interests of the United States.

Moreover, Mr. Serageldin is a kind and ethical colleague, friend, and father.  Many letters attesting to his devotion to his children, friends, and colleagues—appended to this memorandum as Exhibit A[1]—show that, whatever mistakes he has made, he should not be sentenced to time in prison and forced to leave his family and community.

As discussed more fully below, an appropriate sentence—one that is sufficient, but not greater than necessary—is three years' probation, a $7,500 fine, and a $100 special assessment for each count.  Such a sentence is a significant punishment, reflective of the seriousness of the crimes to which Mr. Serageldin has pleaded guilty, but also acknowledges Mr. Serageldin's true remorse for his actions.

---

[1] The home addresses of private parties and names of minor children have been redacted in the public ECF filing.  Unredacted letters will be provided separately to the Probation Office and the U.S. Attorney's Office.

II.     **A Sentence of Three Years' Probation and a $7,500 Fine is a Sufficient But Not Greater than Necessary Sentence Under § 3553(a)**

Without question, Mr. Serageldin committed a serious crime.  He has pleaded guilty to a Superseding Information charging him with one Count of Willfully Retaining National Defense Information in violation of 18 U.S.C. § 793(e).

However, a holistic view of Mr. Serageldin, the conduct at issue here, and Mr. Serageldin's past, present, and future as a productive citizen and dedicated family man make plain that a lengthy prison term is unwarranted here.  Instead, the proposed sentence of three years' probation, a $7,500 fine, and a $100 special assessment for each count is an appropriate and reasonable sentence.

Following *United States v. Booker*, 543 U.S. 220 (2005), the sentencing guidelines are "merely advisory, which means that a district court has considerable leeway to impose a sentence that falls outside the range suggested."  *United States v. Robinson*, 433 F.3d 31, 35 (1st Cir. 2005).  The guidelines "are still *generalizations* that can point to outcomes that may appear unreasonable to sentencing judges" and *Booker* allows courts "to impose non-guideline sentences that override the guidelines, subject only to the ultimate requirement of reasonableness."  *United States v. Jimenez-Beltre*, 440 F.3d 514, 518 (1st Cir. 2006).  In crafting an appropriate sentence, the court must consider the factors set out in 18 U.S.C. § 3553(a) and impose a sentence that is "sufficient, but not greater than necessary" to achieve the goals of sentencing.  18 U.S.C. § 3553(a); *Kimbrough v. United States*, 552 U.S. 85, 101 (2007).

A discussion of each of the relevant § 3553(a) factors follows here.

A. **The Nature and Circumstances of the Offense and History and Characteristics of the Defendant**

    1.    <u>The History and Characteristics of the Defendant</u>

Ahmed Serageldin was born in 1953 in Cairo, Egypt.  He immigrated to the United States in 1980, along with his wife, to study physics, and the two of them stayed to build their life and raise their children here.  As his son, Karim Serageldin, writes:

> My parents immigrated here for better opportunities for themselves and children.  Education was a huge goal for us and my dad completed a PhD in physics from Northeastern University in Boston.  All of his children went on to be graduates of UMASS Boston and Boston University.

Exhibit A at A010.

Mr. Serageldin and his family decided to make their home in the United States after Mr. Serageldin earned his Ph.D. in 1991.  He became a naturalized citizen in 1995.

He began a career as a professor of physics but was laid off and could not continue on the academic track.  Instead, he took a job as a security guard working nights while he looked for a new career in the daytime.  His son, Mohammed Serageldin, writes of the example his father set during this period:

> By example, my father also showed me the dignity of hard work. When being laid off as a professor at a prestigious university he worked as a security guard for more than a year. He had long hours and night shifts and we barely saw him at home nor did we really feel the pressure he was experiencing. He juggled the security guard job and the job search until he accepted the job offered to him by Raytheon. I was a young boy then but when I grew up, I understood how this was a true example of how hard work and responsibility pay off in the end.

Exhibit A at A004.

In 1997, Mr. Serageldin joined Raytheon.  He had a successful career there spanning almost 20 years.  His son Mohammed—who briefly worked at Raytheon one summer—describes Mr. Serageldin's work ethic and the high esteem in which his colleagues held him:

> I was also an intern at Raytheon for a summer while in university and during my time there my name preceded me only because my father's high performance was well known across different departments. Any time I would pass by his cubicle I would find him focused on his screen working out the algorithms for the project he was working on. When I would have lunch with him he was very strict about going back to his cubicle on time. Although I did not attend any meetings with him I heard from some of my own co-workers, that were more senior to me, how on point and high level his thinking and work was. I remember one particular co-worker telling me that 'he just says things as they are.'

Exhibit A at A004.

Similarly, Mr. Serageldin's superiors at Raytheon have also repeatedly praised both his capabilities and his work ethic in formal evaluations over the years:

- From 2015: "Ahmed is strong technically, positive and hard working. He will step eagerly into a task even one that he may not be familiar with. He'll learn where he has knowledge shortfalls and complete the work on time and with high quality." Exhibit B at A004.

- From 2014: "He stepped in on short notice and accomplished a task that I thought would take two weeks and accomplished it in several days. He went beyond the assigned task when [he] noticed inconsistencies in the docum[]ents and identified all the disconnects and recommended resolutions. He truly 'saved the day' on the task."  Exhibit B at A007.

- From 2009: "Dr. Serageldin is a tireless worker, willing to put in extra hours to make sure commitments are met. Dr. Serageldin is extremely thorough and diligent."  Exhibit B at A024.

In addition, Mr. Serageldin participated in the Raytheon Innovation Challenge program, a "[t]argeted innovation program soliciting ideas from across Raytheon to key customer capabilities needs."  Raytheon Company, 2016 Company Overview at 11, *available at*

https://www.acq.osd.mil/log/MR/.PSM_workshop.html/2016%20Files/Day2/Industry_Innovation_Raytheon.pdf.

Mr. Serageldin has also been a pillar of support for friends as well as family.  Dr. Taimi Paadre, Mr. Serageldin's neighbor and friend, writes of the extraordinary help that Mr. Serageldin and his family provided Dr. Paadre after her husband passed away due to cancer in 2010.  Exhibit A at A008.  Mr. Serageldin and his family were also able to help Dr. Paadre—and her son—when Dr. Paadre herself developed cancer:

> In June 2018, I myself was diagnosed with a rare form of cancer, which of course, was difficult for my son (now 20 years old) to face given he had lost his father to cancer at 11 years old. My son dropped out of college and moved home. Again, Ahmed and Zein showed their kind and helpful selves – offering support by dropping off food and checking in on how they could help our small family. My son eventually reenrolled in community college with Ahmed offering to help him with his studies, knowing that it would be difficult for him to get back on track with his engineering studies.

Exhibit A at A008.

Similarly, Rajab Aboubakr, a friend of Mr. Serageldin's for decades, tells the story of the purchase of his first home.  Unable to afford the down payment on his first home by himself, Mr. Aboubakr turned to Mr. Serageldin for help.  Exhibit A at A005.  Despite being only a graduate student at the time and having limited financial resources, Mr. Serageldin selflessly agreed. Exhibit A at A005.  Like Dr. Paadre and Mr. Serageldin's own children, Mr. Aboubakr also writes of Mr. Serageldin's valuable mentorship to his children.  Exhibit A at A005 ("My children love and respect him as he was available to advise them at many crossroads of their lives.").

Now, at 67 years old, a full life behind him, Mr. Serageldin faces the possibility of federal prison time for his crimes.  His health problems are many, including, without limitation:

diabetes, bladder stones, low back pain, sciatica, and asthma.  *See* PSR, ¶ 107.  His age and health problems would make any prison time hard for him.

Harder still is the fact that a man who is consistently described as an exceptionally caring father and man, will spend the last part of his life marked as a felon.  As the many letters to the Court attest, Mr. Serageldin is somebody with deep bonds in the community, with his family, and with a multitude of longtime friends.

### 2.    The Nature and Circumstances of the Offense

Throughout his time at Raytheon, Mr. Serageldin would occasionally take electronic or physical copies of documents home to refer to while he worked there.  Moreover, due to his many health problems, Mr. Serageldin began working occasionally from his home so as to reduce the strain of the long commute to his office at Raytheon.[2]  As a result, he began to take more material home for use on the days when he worked there.

Unfortunately, Mr. Serageldin made the mistake of taking home documents that had been marked classified, including the five documents classified at the secret level listed in the Superseding Information.  *See* ECF No. 60.  Then, when confronted by Raytheon investigators, he foolishly tried to hide his conduct rather than admit to it.  He has since acknowledged the wrongfulness of this conduct, admitted his criminal conduct relating to the retention of the five classified documents, and decided to plead guilty.

Despite the seriousness of his wrongdoing, Mr. Serageldin is not a spy and did not betray his country.  The government and Raytheon have been investigating Mr. Serageldin for years

---

[2] In the PSR, the statement of offense conduct claims that Mr. Serageldin's former supervisor had merely discussed the possibility of Mr. Serageldin's working from home but that the "arrangement" had not been "finalized."  PSR, ¶ 24.  Regardless, as the government concedes, Mr. Serageldin did, in fact, work from home occasionally for some period of time prior to April 2017.

looking for *any* evidence that Mr. Serageldin transmitted classified information outside the United States or to adversaries of the United States. They found nothing, because it did not happen.[3] Mr. Serageldin admittedly was careless in his handling of classified information, but he was at all times—and remains—loyal both to the United States and to Raytheon.

Additionally, one point on the sentencing analysis in the PSR warrants brief discussion at this stage. The government, Mr. Serageldin, and the Probation Office all agree that the enhancement for obstruction of justice in U.S.S.G. § 3C1.1 and the three-level acceptance of responsibility provision in U.S.S.G. § 3E1.1 both apply here. Although the general proposition is that "instances in which [U.S.S.G. § 3C1.1 and § 3E1.1] may go hand in hand are 'hen's-teeth rare,'" *United States v. Nygren*, 933 F.3d 76, 88 (1st Cir. 2019) (quoting *United States v. Maguire*, 752 F.3d 1, 6 (1st Cir. 2014)), they are not always incompatible and are not incompatible here.

First, in the plea agreement, Mr. Serageldin admitted to—and accepted responsibility for—obstructive conduct. Denying the acceptance-of-responsibility reduction to the defendant based on obstructive conduct which took place prior to the initiation of the criminal case and *for*

---

[3] Despite having uncovered no evidence that Mr. Serageldin actually transferred any classified information—even after looking for such evidence for more than three years—the government nonetheless asks this Court to speculate and conclude that Mr. Serageldin did so. Acknowledging that no evidence supports this claim, the government relies on Mr. Serageldin's ties to Egypt, the country of his birth, and his removal of certain classified markings from documents. Of course, the fact that Mr. Serageldin has family members and assets in the country where he was born signifies nothing, and certainly does not suggest disloyalty to the United States or to Raytheon. And Mr. Serageldin's best memory of the removal of classified markings is that he did so in connection with also removing classified information from documents in an attempt to create entirely unclassified versions of documents so that he could permissibly work on them from home. That he may not have actually removed all the classified information from such documents means only that he committed the crime to which he has pleaded guilty— willfully retaining classified information—and does not show that he transferred anything to anyone—conduct which is unsupported by any evidence and to which he has not pleaded guilty.

*which he has accepted responsibility* would be senseless and inconsistent with the plain text of § 3E1.1, which applies to any defendant who "clearly demonstrates acceptance of responsibility for his offense." *See* U.S.S.G. § 3E1.1(a).  It is undisputed that Mr. Serageldin has done so here, so he is entitled to the reduction provided by § 3E1.1.[4]

Moreover, it is undisputed that Mr. Serageldin has *also* satisfied the terms of § 3E1.1(b) by admitting his conduct and pleading guilty at an early stage of the case.  The government agrees that, as a result of Mr. Serageldin's timely acceptance of responsibility—including his acceptance of responsibility for the obstructive conduct—the government avoided preparing for a lengthy and complex trial.  Such a trial would have proceeded under the Classified Information Procedures Act, which would have made it more time consuming and burdensome for all parties and the Court to conduct the trial.  The government and the Court were therefore able to allocate their scarce prosecutorial and judicial resources more effectively.  This is the precisely the conduct that § 3E1.1 is designed to encourage and should, in this case, reward.  Because it is undisputed that Mr. Serageldin's conduct falls within the plain terms of *both* § 3E1.1(a) *and* § 3E1.1(b), the three-level reduction for acceptance of responsibility applies here.

---

[4] Application Note 4 to § 3E1.1 cannot require a different result in these circumstances because it would create an inconsistency between the guideline language—which both the government and Mr. Serageldin agree is satisfied here—and the language of the application note.  Where such an inconsistency exists, the guideline controls.  *See United States v. Lewis*, ___ F.3d ___, No. 18-1916, 2020 WL 3249058, at *3 (1st Cir. June 16, 2020) ("[I]f any inconsistency arises between the commentary and the guideline it interprets -- i.e., if following one will result in violating the dictates of the other -- the guideline supersedes the commentary.") (internal quotations and citations omitted).

B.       **The Sentencing Guidelines**

Per the parties' agreed-upon sentencing analysis, prior to any downward departures or variances, the sentencing guideline range is 57-71 months.  The guideline range calculation is as follows:

| | |
|---|---|
| Base Offense Level (U.S.S.G. § 2M3.3(a)(2)) | 24 |
| Adjustment for Abuse of Position of Trust (U.S.S.G. § 3B1.3) | 2 |
| Adjustment for Obstruction of Justice (U.S.S.G. § 3C1.1) | 2 |
| Acceptance of Responsibility (U.S.S.G. §§ 3E1.1(a), 3E1.1(b)) | -3 |
| | |
| Total Offense Level | 25 |

As discussed above, Mr. Serageldin has no criminal history, so his Criminal History Category is I.  An offense level of 25 with a criminal history category of I results in a guidelines range of 57-71 months.

C.       **Just Punishment and Deterrence**

The recommended sentence of three years' probation, a $7,500 fine, and a $100 special assessment for each count is a severe sentence that will provide adequate deterrence and promote respect for the law.  The First Circuit has recognized that deterrence does not necessarily equate to incarceration.  *See generally United States v. Prosperi*, 686 F.3d 32 (1st Cir. 2012) (affirming sentences of six months home confinement and 3 years of probation despite GSR of 87-108 months).  Judge Stearns' remarks at the sentencing hearing in *Prosperi* are equally applicable to this case:

> I think it is very difficult at times, for those of us who are judges or prosecutors or lawyers, to put ourselves in the shoes of a person with no prior experience with the criminal justice system who finds himself or herself accused of a crime.  I do not think, sometimes, we fully recognize the anguish and the penalty and the burden that persons face when called into account, as these men are, for the wrong that they committed.

*Prosperi*, 686 F.3d at 48 (noting that the burdens of the criminal process on the particular defendants would provide adequate specific deterrence).

Mr. Serageldin comes before this Court with no prior experience with the criminal justice system.  As discussed at length in the letters submitted by his colleagues, friends, and family members, he has already had to face his community, admit that he has pleaded guilty to the crimes charged, and address their shock and disbelief at the situation he now finds himself in. He has also faced the abrupt end of the career at Raytheon that he loved.  And he has not only had every aspect of his life and daily activities scrutinized by government investigators constantly for more three years, but he has also been subject to the restrictive conditions of pretrial release for almost two full years.

Accordingly, the "anguish and the penalty and the burden" here have already extended for years and have profoundly affected Mr. Serageldin.  A lengthy prison sentence is not necessary for specific deterrence nor is it necessary to protect the public.

Finally, Mr. Serageldin is also facing charges in state court for conduct unrelated to the charges to which he has pleaded guilty in this case.  PSR, ¶ 85.  Nothing about the alleged conduct at issue in the state proceedings—which Mr. Serageldin disputes—can properly form any part of the basis for the sentence this Court imposes in this matter.

### D.    The Kinds of Sentences Available

The Court has at its disposal a myriad of sentencing options in framing a just sentence for Mr. Serageldin, including probation combined with other measures the Court may deem appropriate, such as home confinement or community service.  Given the ongoing COVID-19 pandemic—which places persons with diabetes like Mr. Serageldin "at higher risk for severe illness due to COVID-19, as identified by the CDC," *see Da Graca v. Souza*, No. 20-CV-10849-

PBS, 2020 WL 2616263, at *4 (D. Mass. May 22, 2020)—a non-incarceration sentence with a condition of home confinement is a just, available option.  Indeed, the Attorney General has directed the Bureau of Prisons to expand the use of home confinement in light of the pandemic, and courts have ordered home confinement for certain potentially vulnerable inmates.  *See*, *e.g.*, *United States v. Pena*, No. CR 16-10236-MLW, 2020 WL 2798259, at *5-10 (D. Mass. May 29, 2020) (considering Attorney General's memoranda to Bureau of Prisons regarding home confinement and ordering 70-year-old inmate with several medical conditions released to home confinement).

Notably, probation—or an equivalent non-incarceration sentence of time served followed by three years of supervised release—are both available sentences here.  Although probation is not an available sentence under the guidelines in these circumstances, *see* PSR, ¶ 132, this Court may still vary downward and impose probation as long as it "acknowledge[s] [the relevant guidelines] provisions so that we know that it had considered them," *see United States v. Duhon*, 541 F.3d 391, 398 (5th Cir. 2008) (affirming probation sentence where guidelines range fell in Zone D of sentencing table).  Even if the Court elects not to vary downward to impose probation, the Court may impose a sentence with the same effect by sentencing Mr. Serageldin to the time already served while "[d]etained in federal custody for instance offense," *see* PSR, at 2, with a three-year term of supervised release.

A sentence of three years' probation —combined with any measures like home confinement or community service that the Court sees fit to impose—will best achieve the goals of sentencing by imposing a significant, but no greater than necessary, punishment on Mr. Serageldin that will permit him to continue to be active in the lives of his friends and family.

### E.      Grounds For Departure/Variance

Notwithstanding the applicable guideline range discussed above, Mr. Serageldin's

recommended sentence is still appropriate here for two compelling, substantial bases for this

Court to depart downward from the guidelines range.  Taken together, they warrant a downward

departure from any guidelines range to a sentence without prison time, such as the one Mr.

Serageldin recommends.

First, a downward departure is warranted to mitigate the unduly harsh application of

U.S.S.G. § 2M3.3, the guideline for violations of 18 U.S.C. § 793(e).  Although the conduct to

which Mr. Serageldin pleaded guilty—"Willfully *Retaining* National Defense Information," *see*

ECF No. 60 (emphasis added)—satisfies the language of § 793(e), the guideline provision's title

refers to much more serious conduct covered by the statute, such as "transmitting," "disclosure,"

and "unauthorized receipt," *see* U.S.S.G. § 2M3.3.  Mr. Serageldin did not "transmit[],"

"disclose[]," or receive without authorization any classified information, and the government has

not shown otherwise.

Instead, Mr. Serageldin mishandled classified information which he was entitled to

access by removing it from secure areas and retaining it in his home.  The government has not

alleged that Mr. Serageldin lost any of the classified documents he mishandled so as to implicate

the far less harsh provisions of 18 U.S.C. § 793(f) and U.S.S.G. § 2M3.4.  And, as acknowledged

in the commentary to § 2M3.4, "[o]ffenses prosecuted under this statute generally do not involve

subversive conduct on behalf of a foreign power, but rather the loss of classified information by

the gross negligence of an employee of the federal government or a federal contractor."  *See*

U.S.S.G. § 2M3.4, Background.  Similarly, Mr. Serageldin has engaged in no "subversive

conduct on behalf of a foreign power," and the government has not proven otherwise.  Applying

§ 2M3.4 to Mr. Serageldin's conduct—which, again, is even less culpable than the "loss" of

classified information under § 793(f)—would result in a total offense level of 14 and a guideline range of 15-21 months.  *See* U.S.S.G. § 2M3.4(a)(2).

Moreover, the provision of the criminal code that best fits Mr. Serageldin's conduct is 18 U.S.C. § 1924, which proscribes "knowingly remov[ing] [classified] documents or materials without authority and with the intent to retain such documents or materials at an unauthorized location."  *See* 18 U.S.C. § 1924(a).  At the time of Mr. Serageldin's offense, § 1924 had a statutory maximum prison term of one year and therefore constituted a misdemeanor offense.  *See* Pub. L. No. 115-118, tit. II, § 202 (2018) (increasing maximum punishment under § 1924 from one year to five years); *see also* 18 U.S.C. § 3559(a)(6) (statutory maximum punishment of one year imprisonment constitutes a Class A misdemeanor).  Had Mr. Serageldin been charged with violating § 1924, the appropriate guidelines analysis would therefore result in a total offense level of 7 and a guidelines range of 0-6 months.  *See* U.S.S.G. § 2X5.2(a).

Because the guidelines analysis under 18 U.S.C. § 793(e) and U.S.S.G. § 2M 3.4 is unduly punitive and results in a guidelines range that dramatically exceeds the guidelines range that would apply to provisions that better fit Mr. Serageldin's conduct, a meaningful downward departure is warranted here.[5]

Second, Mr. Serageldin respectfully submits that the Court should consider imposing a sentence other than a sentence of imprisonment for a "nonviolent first offender" like Mr. Serageldin.  A "nonviolent first offender" is defined as a "defendant who has no prior convictions . . . and who did not use violence or credible threats of violence or possess a firearm

---

[5] The same analysis applies to the imposition of a fine.  Mr. Serageldin respectfully submits that a fine of $7,500—which would be the low end of the guideline range calculated under 18 U.S.C. § 793(f) and U.S.S.G. § 2M3.4(a)(2) and would be within the guideline range calculated under 18 U.S.C. § 1924 and U.S.S.G. § 2X5.2(a)—is sufficient but not greater than necessary to fulfill the purposes of 18 U.S.C. § 3553(a).

or other dangerous weapon in connection with the offense of conviction." *See* U.S.S.G. § 5C1.1, Application Note 4. It is undisputed that Mr. Serageldin qualifies as a "nonviolent first offender." Accordingly, regardless of whether Application Note 4 to § 5C1.1 formally applies based on the outcome of the Court's guidelines calculation,[6] Mr. Serageldin respectfully submits that the Court should consider this position of the Sentencing Commission in fashioning an appropriate sentence for him.

### F.   Avoiding Sentencing Disparities

In determining an appropriate sentence, the Court should take into account "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Here, a number of other individuals whose criminal conduct is similar to Mr. Serageldin's have received non-incarceration sentences. It would create unwarranted disparities for Mr. Serageldin to face time in prison when other, similarly situated individuals were sentenced to no prison time.

As discussed above, although Mr. Serageldin was charged with and pleaded guilty to retention of classified information under 18 U.S.C. § 793(e), his offense best fits under 18 U.S.C. § 1924. Courts have consistently and repeatedly sentenced defendants who engaged in similar conduct and pleaded guilty to violations of § 1924 to probation. *See, e.g.*, *United States v. Nishimura*, No. 2:15-cr-145, ECF No. 7 (E.D. Cal. Aug. 12, 2015) (naval reservist sentenced to probation and fine for downloading classified documents and storing them on his personal computer and electronic storage devices); *United States v. Harwin*, No. 1:13-mj-77, ECF No. 13 (E.D. Va. Apr 23, 2013) (National Geospatial Intelligence Agency employee sentenced to

---

[6] As discussed above, the guidelines analysis under 18 U.S.C. § 1924 and U.S.S.G. § 2X5.2(a) would result in a guideline range in Zone A of the Sentencing Table such that Application Note 4 to § 5C1.1 would apply.

probation and fine for possessing 14 classified documents in his home and vehicle); *United States v. McGowan*, No. 1:11-mj-781, ECF No. 8 (E.D. Va. Sept. 23, 2011) (FBI Signals Collection Analyst sentenced to $250 fine for keeping in her home without authorization approximately 125 FBI documents, some of which were classified at the SCI level, and altering some of them to make them appear unclassified); *United States v. Neely*, No. 1:10-mj-311, ECF No. 11 (E.D. Va. Sept. 7, 2010) (FBI employee sentenced to probation and fine for retaining classified documents in her home and vehicle); *United States v. McCain*, No. 1:09-mj-691, ECF No. 16 (E.D. Va. Jan. 12, 2010) (submarine engineer sentenced to probation for storing approximately 1,000 classified electronic files on his home computer); *United States v. Uppal*, No. 1:07-mj-274 (E.D. Va. Mar. 29, 2007) (Air Force contractor sentenced to probation and $500 fine for removing classified materials relating to the design and control of missiles, radar systems and aircraft and retaining them in his home and in a commercial storage locker).[7]

Moreover, in a number of high-profile cases involving conduct far worse than Mr. Serageldin's, the defendants were permitted to plead guilty to a violation of 18 U.S.C. § 1924 and received sentences of probation. Four-star General and CIA Director David Petraeus provided to his biographer eight "black books" containing information classified at the Top Secret, SCI, and codeword-levels. *United States v. Petraeus*, No. 3:15-cr-47, ECF No. 24 (W.D.N.C. Apr. 29, 2015). Former National Security Advisor Samuel ("Sandy") Berger

---

[7] Admittedly, all of these defendants were sentenced under the pre-2018 misdemeanor version of 18 U.S.C. § 1924. But in a recent case under the current felony version of § 1924, involving *more* egregious conduct than Mr. Serageldin's, the defendant was sentenced to only 90 days' imprisonment. *United States v. Regis*, No. 1:18-cr-209, ECF No. 20 (E.D. Va. Nov. 12, 2018) (CIA contractor ran hundreds of unauthorized searches in CIA databases and kept several notebooks full of handwritten notes).

secreted classified documents out of the National Archives in 2003 and later destroyed them. *United States v. Berger*, No. 1:05-mj-175, ECF No. 17 (D.D.C. Sept. 13, 2005).

In light of the overlap between 18 U.S.C. § 793(e) and § 1924, courts have also imposed sentences of probation for violations of § 793(e)'s retention catch-all provision.  In *United States v. Lesnick*, No. 2:08-cr-679 (C.D. Cal. Dec. 9, 2008), the defendant, a scientist at Boeing, downloaded onto a thumb drive Secret and Top Secret documents from the sensitive compartmented information facility ("SCIF") where he performed the majority of his work, so that he could do additional work at home.  The defendant did so over a number of years, and at the time of his arrest had more than 2000 classified documents—including 400 Top Secret documents—on his home computer.  The defendant pleaded guilty to one count of unauthorized retention under 18 U.S.C. § 793(e).  At sentencing, the district court concluded that the case was more akin to "mishandling" classified records than conduct which posed a higher risk of transmission or disclosure and, accordingly, should be analyzed for guidelines purposes under the § 1924 guideline—U.S.S.G. § 2X5.1—rather than under the § 793(e) guideline—U.S.S.G. § 2M3.3.  *United States v. Lesnick*, No. 2:08-cr-679, ECF No. 46, at 61:7-14 (C.D. Cal. Dec. 9, 2008).  The district court further concluded that it would create unwarranted sentencing disparities to impose a term of imprisonment, given that others who engaged in more culpable conduct had not been sentenced to incarceration.  *Id.* at 61:10-14.  As a result, the district court sentenced the defendant to three years' probation.  *Id.* at 61:19-21.

In other cases involving mere retention under 18 U.S.C. § 793(e)—as opposed to communication or transmittal of classified information—where courts have imposed prison terms, the terms have been relatively brief.  *See, e.g.*, *United States v. Nirala*, No. 1:16-cv-124, ECF No. 80 (E.D. Va. Mar. 13, 2017) (scientist at National Geospatial-Intelligence Agency

found with more than 20 classified documents in his residence, sentenced to 12 months and one

day imprisonment); *United States v. Saucier*, No. 3:15-cr-131, ECF No. 109 (D. Conn. Sept. 8,

2016) (navy sailor sentenced to 12 months imprisonment for taking photographs on his

smartphone of classified engineering areas on nuclear submarine and hindering investigation by

deleting files).[8]

Because Mr. Serageldin's conduct here is limited to the kind of mishandling of classified

information that has typically been charged under 18 U.S.C. § 1924 and resulted in non-

incarceration sentences, it would create unwarranted sentencing disparities for the Court to

impose a lengthy prison sentence here.

**III.   Conclusion**

For the foregoing reasons, Mr. Serageldin respectfully submits that the Court impose a

sentence of three years' probation, a $7,500 fine, and a $100 special assessment for each count.

Respectfully submitted,

/s/ *Joshua N. Ruby*

Peter E. Gelhaar (BBO# 188310)
George W. Vien (BBO# 547411)
Joshua N. Ruby (BBO# 679113)
DONNELLY, CONROY & GELHAAR, LLP
260 Franklin Street, Suite 1600
Boston, Massachusetts 02110
(617) 720-2880
peg@dcglaw.com
gwv@dcglaw.com
jnr@dcglaw.com

Dated: July 17, 2020

---

[8] After serving his sentence, Mr. Saucier was pardoned by the President on March 9, 2018.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on July 17, 2020.

<u>/s/ *Joshua N. Ruby*</u>
Joshua N. Ruby
